<u>NOT FOR PUBLICATION</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| VERIZON NEW JERSEY, INC., | : |
| Plaintiff, | : Civil Action No. 08-3028 (SRC) |
| v. | : |
| | : **OPINION AND ORDER** |
| DMJM HARRIS, INC., | : |
| Defendant. | : |

**SHIPP, United States Magistrate Judge**

## I. INTRODUCTION

This matter comes before the Court upon DMJM Harris, Inc.'s ("Defendant") Motion to Change Venue. (Doc. No. 9.) Verizon New Jersey, Inc. ("Plaintiff" or "Verizon") opposes the motion. For the following reasons, Defendant's Motion is granted.

## II. FACTUAL BACKGROUND

On June 17, 2008, Verizon filed a Complaint against DMJM Harris, Inc. (Doc. No. 1.) The complaint alleges contract and tort claims resulting from the failure of two New Jersey underground utility relocation projects designed by Defendant (the "Passaic River Project" and the "Evergreen Project"). The work order for the Passaic River Project was submitted and agreed to on March 5, 1999. (Def.'s Moving Br. 5.) On June 11, 2001, the work order for the Passaic River Project was amended for additional work to be performed. *Id.* On December 6, 2001, the work order was again amended for additional work to be performed. *Id.* The work

order for the Evergreen Project was submitted and agreed to by the parties on May 9, 2001. *Id.* The design plans were submitted in 2003. *Id.*

The parties entered into agreements in 1997, 2000, and 2004. (Def.'s Moving Br. 1-4.) Verizon, f/k/a Bell Atlantic, drafted both the 1997 and 2000 agreements. *Id.* at 2. The forum selection clause in the 1997 agreement differs from the forum selection clauses in the 2000 and 2004 agreements.

The 1997 agreement provides:

> The construction, interpretation and performance of this Agreement and orders placed against it by Buyer shall be governed by the domestic laws of the State or District of Columbia wherein the SERVICES are rendered or products and materials are delivered. Seller agrees to submit to the jurisdiction of any Court wherein an action is commenced against Buyer based on a claim for which Seller has indemnified Buyer hereunder.

(Def.'s Moving Br., Ex. A, Doc. No. 9-4, 7.)

The 2000 and 2004 agreements both contain similar forum selection clauses which provide that all actions under the Agreements shall be brought in a court of competent subject matter jurisdiction in New York and that both parties agree to accept the personal jurisdiction of such court. (Def.'s Moving Br. 3-4.)

Defendant contends that the later agreements (2000 and 2004) supersede the 1997 agreement and that the forum selection clause in the later agreements should apply to the Passaic River Project. *Id.* at 4-6. Defendant points to Section 45.1 of the 2000 and 2004 Agreements, both of which provide:

> The provisions of this Agreement supersede all prior oral and written quotations, agreements and understandings of the parties with respect to the subject matter of this Agreement.

*Id.* at 2, 4.

Defendant argues that since the later agreements superseded the 1997 agreement, both projects are subject to the terms and conditions of the later agreements, including the forum selection clause. *Id.* at 5-6. Defendant asks the Court to abide by the provisions of the forum selection clause and remove this action to the Southern District of New York.

Plaintiff opposes Defendant's Motion to change venue. Plaintiff asserts that all of the claims regarding the Passaic River Project fall under the 1997 agreement. (Pl.'s Opp'n Br. 1-2.) Plaintiff also contends that the tort claims asserted with regard to the Passaic River and Evergreen Projects are not covered by any contract. *Id.* at 2. Plaintiff contends that the court can only consider the application of the forum selection clause in the 2000 agreement as it relates to the contract based claims on the Evergreen Project. *Id.* Plaintiff asserts that it would be an injustice to transfer the Evergreen Project claims to New York based solely on the 2000 agreement, since that agreement only applies to the contract claims and the other claims properly belong in New Jersey. *Id.* at 2-3.

Plaintiff urges the Court to consider three factors to determine whether to transfer a matter under 28 U.S.C. § 1404(a), namely: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Id.* at 19. Finally, Plaintiff urges the court to consider both the private interests and public interests protected by 28 U.S.C. § 1404(a). *Id.* at 20-24. Plaintiff sets forth three points under the private interests argument. First, Plaintiff argues that the Court should afford deference to Plaintiff's chosen forum because New Jersey is the location of its principal place of business. *Id.* at 20-21. Second, Plaintiff argues that all the operative facts of the case occurred in New Jersey, all of the work was performed in New Jersey, and all contacts between the parties occurred in New Jersey. *Id.* at 21. Finally, Plaintiff asserts that New Jersey is the most convenient forum for the parties and

for the location of witnesses and documents because most of the key witnesses in this case are located in New Jersey, most of the documents and records in the case are located in New Jersey, and Defendant has an established place of business in New Jersey. *Id.* at 21-23.

In support of the public interests argument, Plaintiff argues that New Jersey and its citizens have a strong public policy interest in the litigation and outcome of this action. *Id.* at 23. According to Plaintiff, this public interest stems from the fact that Plaintiff is a New Jersey public corporation, which provides telecommunications and other utility services to customers throughout the state of New Jersey. *Id.* Plaintiff argues that New Jersey has an interest in protecting its public utilities and in trying a case involving allegations that one of its citizens was the victim of a tort and a breach of contract. *Id.* Therefore, Plaintiff asks the Court to deny Defendant's motion to transfer venue to the Southern District of New York.

Defendant asserts in its Reply Brief that Verizon's opposition fails to acknowledge key factors central to this dispute. First, Verizon's opposition does not recognize that the 1997 agreement expired and terminated on June 30, 2000. (Pl.'s Reply Br. 4-6.) Next, Defendant argues that the subject of the agreements is not purchase orders but services performed by DMJM during the terms of the agreements. *Id.* at 7. Also, Defendant asserts that while Verizon argues that the action must be heard in New Jersey for the convenience of the parties and for the public interest of New Jersey, it has not set forth any evidence that witnesses would not be available in New York or that a New York Court could not resolve the matter in a fair and efficient manner. *Id.* at 8-10. Finally, Defendant notes that Verizon negotiated, drafted and executed an agreement pursuant to which it is required to bring claims in the Southern District

of New York. *Id.* at 11-12. Therefore, Defendant asserts that Verizon's decision to file in New Jersey is not entitled to any deference.

### III.  DISCUSSION

1.  <u>Legal Standard for Change of Venue</u>

In the federal court system, changes of venue are codified under 28 U.S.C. § 1404. The statutory language provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The district court has the discretion to adjudicate motions to transfer based on case-specific factors. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

In assessing the convenience of a change of venue, a forum-selection clause is a "significant factor that figures centrally in the district court's calculus." *Id.*  For a court to find "inconvenience," the transfer of venue must "be so manifestly and gravely inconvenient . . . that [the party] will be effectively deprived of a meaningful day in court." *MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844, 848 (3d. Cir. 2003)(*quoting M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 19 (1972) (*overturned on other grounds*)).

Courts should also contemplate public and private concerns when considering a change of venue. *Stewart Org., Inc.*, 487 U.S. at 30.  The forum-selection clause alone is not dispositive and the Court employs a balancing test to determine whether to transfer venue. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995).  However, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum" and

"plaintiffs bear the burden of demonstrating why they should not be bound to their contractual choice of forum." *Id.*

The *Jumara* Court expounded on the private and public interests to be considered when applying the balancing test. *Id*. The private interests include, but are not limited to:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id*. at 879 (internal citations omitted).

The public interests include, but are not limited to:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id*. at 879-880 (internal citations omitted).

2.  Subsequent Agreements

The parties do not dispute that agreements can be modified or superseded by subsequent agreements. The issue is whether the parties intended the later agreements in 2000 and 2004 to modify or supersede prior purchase orders from the time frame in which the 1997 Agreement was in effect. Under New Jersey law:

> [t]he general rule is that a subsequent contract covering the same subject matter and made by the same parties, but containing terms inconsistent with the former contract so that the two cannot stand together, rescinds, supersedes and substitutes for the earlier contract and becomes the only agreement on the part of the parties on the subject matter.

*Kant v. Seton Hall Univ.*, 2008 U.S. Dist. LEXIS 638, at 19-20 (D.N.J. Jan 3, 2008)(*quoting Rosenberg v. D. Kaltman & Co.*, 28 N.J. Super. 459, 463-64 (Ch. 1954)). The parties to the agreements in 2000 and 2004 were the same parties to the 1997 Agreement. However, the forum-selection clauses provide for two different forums: the location of the loss (in the 1997 Agreement) and New York (in the 2000 and 2004 Agreements). The only question that remains is if the subject matter of the agreements is the same.

Plaintiff contends that the subject matter of the Agreements are distinct as they relate to individual and separate purchase orders for different projects as those projects arose within the effective terms of specific agreements. (Pl.'s Opp'n Br. 14.) Defendant responds by describing the agreements as "services to be performed." (Def.'s Reply Br. 6-7.) Both parties are business-savvy corporate entities, well aware of the art of drafting and entering into contracts. Plaintiff, formerly known as Bell Atlantic Network Services, Inc., drafted the 2000 Agreement which provided the initial forum change to New York from the original forum listed in the 1997 Agreement. (Def.'s Moving Br., Ex. C.)

If any ambiguities exist in the 2000 Agreement drafted by the Plaintiff, the Court should apply the common-law rule of contract interpretation and construe ambiguous language against the interest of the party that drafted it. *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62 (1995). Section 45.0 of the 2000 Agreement, labeled "Entire Agreement", states in pertinent part that: "[t]he provisions of this Agreement supersede all prior oral and written quotations, agreements, and understanding of the parties with respect to the subject matter of this Agreement." (Def.'s Moving Br., Ex. C.) The plain language indicates that the parties signed

7

this new agreement with the intent of altering their business relationship as it had existed under the 1997 Agreement. The subsequent 2000 and 2004 agreements denote New York as the forum state. The original work order for the Passaic Project was issued in 1999, while the 1997 Agreement was in effect. However, there were multiple revisions made during 2001, while the 2000 Agreement was in effect. Since Plaintiff entered into the 2000 and 2004 Agreements which plainly stated the earlier terms of the 1997 Agreement would be superseded, the Plaintiff is subject to the superseding terms of the 2000 and 2004 Agreements.

3.  Subjecting "Tort" Claims to Contract Provisions

Plaintiff does not dispute that the forum-selection clause would apply to contract-related claims on the Evergreen Project as it was entered into after the 1997 Agreement had expired. However, Plaintiff argues that the forum-selection clause only applies to actions "under this Agreement." Plaintiff asserts that its tort claims do not fall under the agreement. (Pl.'s Opp'n Br. 16-17.) The Court does not find Plaintiff's analogy between *Nubenco Enters. v. Inversiones Barberena, S.A.*, 963 F. Supp. 353 (D.N.J. 1997) and the current case persuasive. In *Nubenco*, the Court found that the defamation claim did not arise under the agreement. *Id*. at 373-374. The Court stated, "[T]he tort claims alleged by Nubenco do not specifically appear to arise out of either [agreement], but rather out of extra-contractual events." *Id.* at 373. Unlike *Nubenco*, Plaintiff in the present case filed tort claims due to professional malpractice which stemmed from the performance of the contract itself. The facts surrounding the promises and performances of the 2000 Agreement and related work orders are intertwined with the same facts that would potentially sustain a professional malpractice claim. Therefore, the "tort"

claims alleged here fall under the 2000 Agreement and will be subject to the forum-selection clause.

4.    Balancing Test Analysis

Bearing in mind that the Court finds the later forum-selection clauses apply to both the Passaic and Evergreen Projects, an analysis is still necessary to determine if the change of venue should be granted.

An analysis of the private factors set forth in *Jumara* leads the Court to the conclusion that the forum selection clause should be enforced in the present case. *Jumara*, 55 F.3d at 879. Plaintiff has chosen New Jersey as the forum in which to file this action. The claim arose in New Jersey where the Passaic and Evergreen Projects commenced. However, New Jersey shares a border with its neighboring state of New York. In addition, there is no indication that any witnesses would be unavailable for trial if this case were transferred to New York. The location of any books and records that might be needed for the trial will likely be in close proximity, whether the forum is New Jersey or New York. The Court in *MoneyGram* failed to find that a change of venue "just across a river" from New Jersey to New York would lead to such an inconvenience that the forum-selection clause should not be applied. *MoneyGram*, 65 Fed. Appx. at 848. Similarly, this Court is not convinced that any compelling private interests would effectively deprive Plaintiff of a meaningful day in Court.

A consideration of the public interests leads the Court to the same conclusion. New York courts are fully capable of adjudicating the claims in this case. The parties entered into an agreement, drafted by Plaintiff, which selected New York as the forum. The law to be applied

per the choice of law provision in Section 18.0 of the 2000 Agreement is New York law. (Def.'s Moving Br., Ex. C.)  The Court has not been persuaded that any practical considerations should warrant it to conclude that New York is an inconvenient forum.  Plaintiff claims that New Jersey has an interest in deciding local controversies at home.  This does not hold substantial weight because New Jersey upholds forum-selection clauses.  New Jersey will not uphold a forum-selection clause where the contractually-selected forum has a policy which is repugnant to New Jersey public policy.  However, Plaintiff does not challenge the validity of the forum-selection clause as a whole and this Court finds no repugnancy to New Jersey public policy under the facts of the present case.

Accordingly, the Court finds that a balancing of the factors in the present case favors enforcement of the forum selection clause.

### V.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Change Venue is GRANTED.


　　　　　　　　　　　　　　　　  s/ Michael A. Shipp          
**HONORABLE MICHAEL A. SHIPP**
**United States Magistrate Judge**

Dated: April 30, 2009